FUTURE TECHNOLOGY TODAY, INC., a Florida Corporation, Plaintiff-Appellant,

v.

OSF HEALTHCARE SYSTEMS, an Illinois Corporation, Defendant-Appellee.

No. 99-11767.

United States Court of Appeals,

Eleventh Circuit.

July 14, 2000.

Appeal from the United States District Court for the Southern District of Florida (No. 98-08541-CV-KLR); Kenneth L. Ryskamp, Judge.

Before TJOFLAT, MARCUS and BRIGHT[*], Circuit Judges.

PER CURIAM:

This case presents the question of personal jurisdiction in a diversity case in which the Appellant, Future Technology Today, Inc. ("FTT"), a Florida corporation, brought an action for breach of contract and conversion against the Appellee, OSF Healthcare Systems ("OSF"), an Illinois corporation. The contract in question required FTT to remediate OSF's computer systems to obtain year 2000 ("Y2K") compliant status. OSF operates various health care facilities in the Midwest (seven in Illinois, one in Michigan, and one in Iowa). It does no business in the usual sense in any other state.

The factual predicate for a personal jurisdictional dispute between the parties rests on circumstances indicating that, while FTT agreed to remedy the computer systems located in Illinois, it performed, or attempted to perform, its remedial work on data transmitted by the Internet from OSF to Appellant's workplace in Boca Raton, Florida.

Prior to Appellee declaring the contract in default, the parties dealt with FTT personnel who came to OSF's headquarters in Peoria, Illinois. Other communication occurred between Peoria headquarters and Boca Raton by regular, first-class mail, electronic mail, facsimile, or telephone.

After FTT filed its action in federal district court in Florida, the Appellee moved for a dismissal of the action for lack of personal jurisdiction. The district court considered the motion on affidavits, as well as by conducting an evidentiary hearing. At the conclusion, the district court granted the motion and dismissed the action in an Order dated May 17, 1999. The Appellant contends that personal jurisdiction over the Illinois

---

[*]Honorable Myron H. Bright, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

corporation exists under Florida long-arm statutes, Fla. Stat. § 48.193(a) (carrying on a business or business venture in Florida); Fla. Stat. § 48.193(b) (committing a tort in Florida); and Fla. Stat. § 48.193(g) (breaching a contract by failing to perform acts required by the contract to be performed in Florida).

We affirm the district court. We have carefully considered the record, the briefs, and the oral arguments of the parties. We conclude that the district court opinion by the Honorable Kenneth L. Ryskamp fully and fairly discusses the issues and has reached the correct result in the case.

Accordingly, we AFFIRM on the basis of the district court opinion in District Court Case No. 98-8541-CIV-RYSKAMP, attached as an appendix hereto, dismissing the action.

## APPENDIX

THIS CAUSE came before the Court upon defendant's motion to dismiss. [DE-10]. The plaintiff filed a memorandum in opposition and the defendant replied. The Court held an evidentiary hearing on the issue of personal jurisdiction or lack thereof. The motion is ripe for adjudication.

## I. BACKGROUND[1]

This an action is brought pursuant to this Court's diversity jurisdiction. 28 U.S.C. § 1332(a). Defendant, OSF Healthcare, Inc. (hereinafter "OSF") is a not-for-profit company incorporated under the laws of Illinois with its principal place of business in Peoria, Illinois. OSF Healthcare Inc., is an administrative body which operates nine healthcare facilities, seven in Illinois and one apiece in Michigan and Iowa. Plaintiff, Future Technology Today, Inc. (hereinafter FTT), is a Florida company organized under the laws of Florida with its principal place of business in Boca Raton, Florida.

OSF contracted with FTT to remediate its computer system in order to obtain year two thousand (hereinafter "Y2K") compliant status. OSF initially contacted FTT, by telephone, from its Peoria, Illinois headquarters. FTT representatives traveled to Peoria, at OSF's expense, to make a presentation on FTT's abilities and capacities. A proposal was sent to OSF and parties entered into a contract for a Y2K impact analysis. The impact analysis contract was performed successfully by both parties and is not the subject of this lawsuit. A second contract ("remediation contract") was ultimately signed by the defendant in Peoria (on September 15, 1997) after being signed in Florida by FTT (on September 2, 1997). All subsequent dealings between the parties, either by first class mail, electronic mail, fax or telephone occurred while OSF was in

---

[1]The factual background is based on the allegations in the complaint as well as testimony developed at the evidentiary hearing.

Peoria. Large amounts of information were transmitted to plaintiff's workplace in Boca Raton, from defendant's workplace in Peoria between computers and over high speed communications lines.

On April 23, 1998 OSF declared FTT to be in default for inadequate performance on the contract. Plaintiff informed defendant that the remediation work was almost 80-90% complete. At FTT's invitation, OSF sent a team of people to Florida to inspect the work which had already been performed on OSF's information systems. OSF employees remained in Florida for only three days reviewing computer information both from binders filled with paper and computer terminals. At the point of departure, it became apparent that the OSF employees had in their possession some material from FTT's facilities, specifically a roadmap of the OSF remediation work. FTT contends that the roadmap was highly sensitive information belonging to FTT. OSF contends that the contract between the parties provided that upon reduction to a tangible medium of expression, any work performed by FTT became the property of OSF and therefore the roadmap belonged to OSF, not FTT. Regardless, the roadmap was returned to FTT.

FTT sued OSF in this court for breach of contract (counts I and II) and conversion (count III) under Fla. Stat. § 48.193(a), (b) and (g). Subsequent to declaring the plaintiff to be in breach by virtue of inadequate performance, OSF discontinued payments under the contract. The contract was worth in excess of $4 million.

Defendant challenges this Court's personal jurisdiction over it considering that it never had any presence in Florida prior to the declared breach of the contract. Plaintiff opposes defendant's motion on the grounds that, (1) defendant's tortious activity satisfies the Florida long-arm statute, (2) defendant's breach of contract also satisfies the Florida long-arm statute, and (3) the number and types of contacts which OSF had with FTT in Florida are sufficient to comport with the due process considerations of traditional notions of fair play and substantial justice.

## II. DISCUSSION

### A. Respective Burdens of Proof

Plaintiff's burden in alleging personal jurisdiction is to plead sufficient material facts to establish the basis for exercise of such jurisdiction. *Prentice v. Prentice Colour, Inc.,* 779 F.Supp. 578, 583 (M.D.Fla.1991). The Eleventh Circuit has also stated,

> First, the plaintiff must allege sufficient facts in his complaint to initially support long arm jurisdiction before the burden shifts to the defendant to make a prima facie showing of the inapplicability of the statute. If the defendant sustains this burden, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint.

*Prentice,* 779 F.Supp. at 583 (citations omitted).

### B. Legal Principles Governing Personal Jurisdiction

Defendant moves to dismiss this action under Federal Rule of Civil Procedure 12(b)(2). A court must conduct a two-part inquiry when deciding the issue of personal jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623 (11th Cir.1996). First, the court must determine whether the applicable state statute governing personal jurisdiction is satisfied. *Sculptchair,* 94 F.3d at 626. If the requirements of the long-arm statute are satisfied, then the court must inquire as to, (1) whether defendant has established sufficient "minimum contacts" with the state of Florida; and (2) whether the exercise of this jurisdiction over defendant would offend "traditional notions of fair play and substantial justice." *Id.* at 630-31 (quoting *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

### 1. Florida Long Arm Statute

Plaintiff contends that the requirements of the Florida long-arm statute are met by virtue of defendant, (1) doing business in Florida; (2) breaching a contract in Florida by failing to perform acts required by the contract to be performed in Florida, see Fla. Stat. § 48.193(1)(a), (g); and (3) committing the tort of conversion in Florida. See Fla. Stat. § 48.193(1)(b).

### a. Fla. Stat. § 48.193(1)(a) Operating a Business

Florida statute 48.193(1)(a) states in relevant part,

> Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself...to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts: (a) Operating, conducting, engaging in, or carrying on a business venture in this state or having an office or agency in this state.

In order to establish that a defendant is "carrying on business" for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit. *Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 627 (11th Cir.1996), *citing, Dinsmore v. Martin Blumenthal Associates, Inc.,* 314 So.2d 561, 564 (Fla.1975). The Court cannot find support for plaintiff's allegation that defendant falls within Florida's long-arm jurisdiction statute under the provision dealing with the operation of a business in Florida. Defendant's business is running healthcare facilities in the Midwest, not contracting with computer companies in order to obtain remediation services for its computer information systems. The contract with plaintiff was not for defendant's pecuniary benefit in any direct sense. The work product may have saved defendant's entire business from potential

failure due to millennium bug problems, but the immediate pecuniary interest to the defendant was the expenditure in excess of $800,000 paying for plaintiff's services. Plaintiff's attempt to satisfy the long arm statute under a "continuing business" in Florida theory is rejected.[2]

### b. Fla. Stat. § 48.193(1)(g) Breaching a Contract

Florida statute § 48.193(1)(g) permits Florida courts to have jurisdiction over a non-resident when that party, "breach[es] a contract in this state by failing to perform acts required by the contract to be performed in this state." Defendant stopped making scheduled payments under the contract once it declared the plaintiff to be in default on the contract. Plaintiff argues that the payments were required to be made in Florida and therefore, any non-payment constitutes a breach of an essential term of the contract.[3] The events, as recounted by both parties, appear to be that it was FTT who was first declared to be in breach, therefore any subsequent breach by OSF may be irrelevant except to the determination of damages. However, plaintiff has alleged that defendant breached the contract by refusing to continue payments to plaintiff. Without deciding the case on the merits, the Court will assume *arguendo,* that the non-payment of the amount due under the contract constituted a breach of the agreement and that plaintiff has satisfied that portion of the long-arm statute under 48.193(1)(g).

### c. Fla. Stat. § 48.193(1)(b) Committing a Tort

Florida statute § 48.193(1)(b) subjects any person who "commit[s] a tortious act within [the state of Florida]" to the jurisdiction of the Florida courts. Plaintiff alleges that the defendant committed the tort of conversion by possessing the property of the plaintiff, without permission, for a period of several hours. Defendant contends that the property could not have been the property of the plaintiff by virtue of that provision of the contract defining any work performed by the plaintiff and reduced to a tangible medium of expression being the property of the client, i.e., OSF. In order to determine whether a tort was *not* committed by the defendant, this Court would have to conduct a full-scale inquiry into the nature of the document taken, an interpretation of the contract, and a determination on the merits. A motion to dismiss for lack of personal jurisdiction does not require such an inquiry. The plaintiff has alleged the conversion, and the record is in

---

[2]Notably, counsel for plaintiff stated at the evidentiary hearing, "We are not arguing that they [defendant] are doing business in Florida." Hearing Trans. at 119.

[3]Although the complaint alleges that all payments to FTT were to be made in Florida, the contract itself does not specify any location for payment. The parties agree that the law in Florida is that in absence of a location for payment as designated by the contract, payments should be made to the seller's place of business.

dispute as to the truth of the accusation, therefore the Court will construe the facts in the light most favorable to the plaintiff and hold that the alleged conversion satisfies Florida's statute on long-arm jurisdiction.

## 2. Federal Due Process Considerations

Regardless of plaintiff meeting the first part of the Court's inquiry into the existence of personal jurisdiction, the Court must now conduct a completely different analysis regarding minimum contacts and due process considerations.

There are three considerations under the due process clause: (1) purposeful availment of the forum state; (2) the cause of action arises out of the activities of which you purposefully availed yourself, i.e., the contacts must proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum state, *Burger King v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957)), and (3) reasonable foreseeability that " '[a defendant] should reasonably anticipate being haled into court there.' " *Burger King,* 471 U.S. at 474, 105 S.Ct. 2174 (quoting *World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

Plaintiff relies heavily on *Future Tech. Int'l, Inc. v. Tae II Media, Ltd.,* 944 F.Supp. 1538 (S.D.Fla.1996) however, the Court finds *Future Tech* to be distinguishable on its facts. In *Future Tech,* the defendant (manufacturer) allegedly conspired against the plaintiff (distributor) to, *inter alia,* undermine a foreign trade market by soliciting clients away from the plaintiff, breach the manufacturing agreement before it was signed and wrongfully withhold products for distribution. The court found defendant, *Tae II,* to have established sufficient contacts with Florida to satisfy the due process considerations of the fourteenth amendment.[4] Defendant *Tae II* made six trips to Miami within one year, and attended three business meetings during those six trips; the Court characterized the business relationship as involving "numerous transactions...not tied to an isolated, short-term arrangement." *Future Tech,* 944 F.Supp. at 1558.

In contrast, the facts of this case include a single telephone call, by the buyer of a service upon the advice of another. See, *Alan Richard Textiles, Ltd. v. Vertilux, Inc.,* 627 So.2d 529, 530 (Fla. 3d DCA 1993)(repeated orders from a N.Y. company to Florida did not constitute minimum contacts when the purchaser of goods had no office/did no business in, had no other presence in Florida.) The contract called

---

[4]Notably, the *Tae II* defendants also satisfied the Florida long-arm statute under the provision dealing with "operating, conducting, engaging in, or carrying on a business [in Florida]," a provision which the plaintiff in this case concedes it is not arguing. Fn. 2, *supra.*

for work to be performed in converting computer files and although the work could have been performed anywhere, the buyer didn't care where, the seller chose to perform the work from its facility in Florida. The contract was for a one-time service, as opposed to a continuous business relationship extending beyond the remediation work. The information to be converted was transmitted over high speed communications lines; there were no sales over the internet or email. All contract negotiations took place by telephone; the contract was signed by the defendant in Illinois after at least two visits to that state by the plaintiff; the defendant never came to Florida until after the purported initial breach. By all accounts, the defendant did not reasonably anticipate being haled into a Florida court.

As to whether the forum would comport with traditional notions of fair play and substantial justice, the court should look at: (a) the burden on the defendant, (b) the forum State's interest in adjudicating the dispute, (c) the plaintiff's interest in obtaining convenient and effective relief, (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (c) the shared interest of the several States in furthering fundamental substantive social policies. *Burger King,* 471 U.S. at 466, 105 S.Ct. 2174 (quoting *World-Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. 559.) The broad policy and burden considerations required by the fair play considerations suggest that the burden on defendant in defending a lawsuit in Florida would be great. Any plaintiff's interest in obtaining convenient and effective relief is always present. However, this Court cannot conclude a strong state interest in haling people into Florida courts from all over the country for entering into one service arrangement, over the telephone without ever setting foot in Florida. See *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.,* 786 F.2d 1055 (11th Cir.1986)(collecting cases where no personal jurisdiction was found over non-resident purchasers for one-time transactions.)

The Court concludes that while the Florida long-arm statute may have been met on its technical requirements, the due process considerations of minimum contacts and fair play prevent the action from going forward in this court.

## III. CONCLUSION

Having considered the motion and the pertinent part of the record and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that defendant's motion to dismiss for lack of personal jurisdiction is GRANTED, [DE-10] The case is DISMISSED.